UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL KERBY,

        Plaintiff,

   v.

PARSONS CORPORATION,

        Defendant.

No. C06-687MJP

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS

     This comes before the Court upon Plaintiff Michael Kerby's motion for summary judgment on Defendant Parsons Corporation's counterclaims for breach of contract, breach of warranty, breach of the implied duty of good faith and fair dealing, unjust enrichment, and negligent misrepresentation. Upon review of the record (Dk. Nos. 42, 63-69, 73-79, 81-85) and the documents submitted by the parties, the Court DENIES Kerby's motion as to the breach of contract and breach of warranty claims. The Court GRANTS Kerby's motion as to the implied duty, unjust enrichment, and negligent misrepresentation claims.

     In the alternative, Kerby asks that the Court preclude Parsons from relying on a recalculation of the Final Working Capital Statement ("FWCS") or a multiplier of Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA") as a measure of damages. The Court GRANTS Kerby's

ORDER - 1

motion to bar recalculation of the FWCS as a measure of damages and DENIES Kerby's motion to bar use of an EBITDA multiplier as a measure of damages.

**I. Background**

Robison Construction, Inc. ("RCI") was a closely-held Washington-based construction company. It had nine shareholders, including Kerby. In April 2005, RCI entered into a Stock Purchase Agreement ("SPA") with Parsons under which Parsons would purchase the RCI Shareholders' stock for $52 million. However, the agreement provided that $5 million of the $52 million purchase price would be held back in two $2.5 million escrow accounts. One of these escrow accounts was the "Working Capital Escrow Holdback," and it was to be released to the Shareholders within 30 days of the sale unless Parsons objected to RCI's statement of working capital as set forth in the FWCS. The other escrow account was the "Indemnity Escrow Holdback," and it was to be released to the Shareholders within 12 months of the sale unless Parsons sought indemnification from the Shareholders pursuant to the indemnification section of the SPA. However, the SPA did not limit Parson's indemnification remedies to the $2.5 million in the Indemnity Escrow Holdback.

In March 2006, 11 months after the sale of RCI, Parsons provided notice that it was seeking indemnification from the Shareholders based on the Shareholders' alleged breach of various representations and warranties in the SPA. On May 16, 2006, Kerby (as representative of the RCI Shareholders) filed suit in this Court for a declaration that the Shareholders did not breach the SPA and are thus entitled to the Indemnity Escrow Holdback. The complaint also alleged that *Parsons* breached the SPA by seeking indemnification from the Shareholders in bad faith.

On October 17, 2006, Parsons filed counterclaims against the Shareholders for breach of contract, breach of warranty, breach of the implied duty of good faith and fair dealing, unjust

ORDER - 2

enrichment, and negligent misrepresentation. On April 26, 2007, Kerby filed the present motion for summary judgment on all Parsons' counterclaims.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). In making this inquiry, a court must draw all justifiable inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

The Federal Rules expressly allow a court to grant summary judgment on a claim "or any part thereof." Fed. R. Civ. P. 56(a), (b). A court may use summary judgment to shape the pending litigation by removing particular issues from trial. See 11 J. Moore et al., Moore's Federal Practice § 56.40[2]. Therefore, the Court may grant partial summary judgment to preclude Parsons from using certain damage calculations even if this would not eliminate any of Parson's claims.

## III. Choice of law

The SPA contains a choice of law clause which provides that "This Agreement shall be governed by and construed in accordance with the domestic substantive laws of the State of New York.." The parties agree that Parsons' claims for breach of contract, breach of warranty, and breach of the implied duty of good faith and fair dealing are governed by New York law, as these are all contract claims which are brought under the SPA.

Parson's claim for negligent misrepresentation is *not* a contract claim; it is a tort claim, regardless of the contractual relationship between the Shareholders and Parsons. This tort claim falls outside the New York choice of law clause, which by its terms only applies to the SPA itself. The

ORDER - 3

Court instead will adjudicate this claim under Washington law, pursuant to the familiar rule that Federal courts sitting in diversity apply the law of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

Parsons' claim for unjust enrichment is a "quasi-contract" claim, and the parties dispute whether the New York choice of law clause encompasses this claim. In answering this question, the Court must apply Washington law. See Alaska Airlines, Inc. v. United Airlines, Inc., 902 F.2d 1400, 1402 (9th Cir. 1990) (Federal court in Alaska must use Alaska law to determine whether contracting parties' Illinois choice of law clause encompasses certain issues).

Under Washington law, the New York choice of law clause does not encompass the unjust enrichment claim. Washington courts equate an unjust enrichment claim to "a contract implied in law." Lynch v. Deaconess Medical Center, 776 P.2d 681, 683 (Wash. 1989); see also Bank of America, N.A. v. Wells Fargo Bank, N.A., 109 P.3d 863, 870 (Wash. App. 2005). Given that unjust enrichment deals with a contract *implied in law*, it is necessarily distinct from the SPA, which is an express contract in fact. In other words, Parsons' claim for unjust enrichment is not brought under the SPA; it is brought under implied legal principles that exist outside the SPA. Because this claim is not brought under the SPA, it is not subject to the New York choice of law clause. The Court must instead adjudicate this claim under Washington law. See Klaxon, 313 U.S. at 496.

### IV. Analysis

#### A. Breach of Contract

The Court must deny Kerby's motion for summary judgment as to Parsons' claim for breach of contract. Parsons has provided sufficient evidence to create a genuine dispute over whether the Shareholders breached various provisions of the SPA. Much of this evidence comes from Parsons'

ORDER - 4

expert, Warren Goolsby, who examined the individual files for several RCI projects and found that the contract prices listed in these files differed significantly from the prices listed on the SPA documents that the Shareholders submitted. For instance, the project files for Job 847J showed a contract price of $61,504,606, while Schedule 3.13 (submitted pursuant to the SPA) listed a contract price of $64,732,252. Similarly, the individual project files for Job 743 showed a contract price of approximately $3,000,000 more than that which was listed in the SPA documents.

Goolsby also asserts that he interviewed RCI personnel and found that RCI failed to disclose a known loss on Job 893. Apparently RCI had bid far below its competitors for this job, and discovered within a day that it had done so by mistakenly omitting the $3 million dollar cost of earthwork. Nonetheless, RCI failed to disclose the $3 million earthwork cost in the SPA documents, thus overstating the expected value of Job 893.

If true, Goolsby's assertions could show that the Shareholders breached several provisions of the SPA. For instance, Section 3.13 of the SPA requires the Shareholders to provide a backlog document of pending RCI contracts. Section 3.13 also warrants that the backlog document was prepared in good faith and with no knowledge of facts or circumstances that would have a material adverse effect. If the project files listed significantly lower contract prices than the backlog document, or if the Shareholders failed to disclose known losses on certain jobs, then this would have a material adverse effect by making the backlog appear more lucrative than it really was. It might also create an inference that the Shareholders submitted the backlog document in bad faith, by "highballing" the contract prices above what their own files and records showed.

Similarly, section 3.5 of the SPA warrants that RCI's balance sheets are "complete and accurate in all material respects," and section 3.23 warrants the same for RCI's books and records. If

ORDER - 5

RCI highballed contract prices and failed to disclose known losses, then this would raise a genuine issue as to whether RCI's books, records, and balance sheets were correct and complete.

Finally, section 3.30 of the SPA essentially warrants that all the other specific warranties and representations in the SPA documents are accurate and complete. If the Shareholders breached Sections 3.5, 3.13, or 3.23 of the SPA – as Goolsby's evidence suggests – then this would also constitute a breach of Section 3.30.

However, Parsons may *not* base its contract claim on the allegation that the Shareholders breached Section 1.6 of the SPA. Section 1.6 required the Shareholders to submit a FWCS "in accordance with GAAP and otherwise consistent with historical practices." But Section 1.6(c) provides that the FWCS shall be deemed "binding and conclusive" within 30 days after it is received. This precludes Parsons from challenging the Shareholders' calculation of the FWCS, since the 30 day window for contesting the FCWS has long since passed.

Parsons argues that it may nonetheless challenge the FWCS on the theory that the Shareholders committed fraud in creating it. Under New York law, a contract provision stating that certain findings are binding and conclusive is void if those findings were tainted by fraud. See, e.g. Morgan Guaranty Trust Company of New York v. Wasserman, 10 A.D.2d 278, 283-84 (1st Dept. 1960); Newmark and Co. Real Estate, Inc. v. C & A Trimming Corp., 511 N.Y.S.2d 205, 206 (N.Y. City Civ. Ct. 1987).

However, fraud must be pled with particularity under New York law, and one of the pleading requirements is that the defendant had knowledge of the alleged misrepresentation. See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2nd Cir. 2006). Parsons has not pled that the Shareholders knew of the falsity of their alleged misrepresentations when calculating the FWCS. Indeed, Parsons'

ORDER - 6

pleadings regarding the FCWS state only that this document was "untrue, inaccurate and incomplete, and . . . had not been prepared in accordance with GAAP."

Because Parsons has not pled the knowledge element of fraud with respect to the FWCS, it cannot attack the FCWS as a product of fraud. Instead, the FCWS must be deemed binding and conclusive as required by SPA section 1.6(c).

In summary, Parsons has raised a genuine issue of material fact as to whether the Shareholders breached Sections 3.5, 3.13, 3.23, and 3.30 of the SPA. For these reasons, Parsons' claim for breach of contract survives summary judgment. However, Parsons may not base its breach of contract claim on Section 1.6 of the SPA, because the FCWS prepared under Section 1.6 cannot be attacked in the absence of any specific allegation of fraud.

**B.      Breach of Warranty**

SPA Sections 3.5, 3.13, 3.23, and 3.30 are listed in the SPA as "Representations and Warranties." Therefore, if the Shareholders breached these contract clauses, they would be liable for breach of warranty as well as breach of contract. As stated above, Parsons has raised a genuine issue of whether the Shareholders breached these clauses. Thus, summary judgment is improper on the breach of warranty claim for the same reasons that it is improper on the breach of contract claim.

**C.      Breach of the Implied Duty of Good Faith and Fair Dealing**

Under New York law, a claim for breach of the implied duty of good faith and fair dealing must be dismissed as redundant where the actions violating the implied duty are the same as those violating express provisions of a contract. See Kamfar v. New World Restaurant Group, Inc., 347 F.Supp. 2d 38, 52 (S.D.N.Y. 2004). In this case, Parsons does not allege any violations of the implied

ORDER - 7

duty besides those actions which allegedly violated express clauses of the SPA. Therefore, the claim for breach of the implied duty must be dismissed as redundant.

### D. Unjust Enrichment

Under Washington law, a party may not bring an unjust enrichment action "relating to the same matter" as an express contract. See United States for the Use and Benefit of Walton Technology, Inc. v. Westar Engineering, Inc., 290 F.3d 1199, 1204 (9th Cir. 2002) (quoting Chandler v. Wash. Toll Bridge Auth., 137 P.2d 97, 103 (Wash. 1943)). In this case, Parsons' unjust enrichment claim relates to the same matter as its contract claim – namely, that Parsons overpaid under the SPA and should be compensated accordingly. Thus, Parsons cannot sustain an unjust enrichment claim under the Chandler rule.

### E. Negligent Misrepresentation

Under Washington law, a claim for negligent misrepresentation must be dismissed where "the parties' relationship is governed by contract and the loss claimed is an economic loss." Alejandre v. Bull, 153 P.3d 864, 870 (Wash. 2007). Such is the case here.

Parsons points out that the Alejandre Court declined to answer whether the economic loss rule applies to claims for fraudulent inducement, and argues that its contract claims sufficiently allege fraudulent inducement. However, as discussed above, fraud must be pled with particularity. At oral argument, Parsons conceded that it had not specifically pled a fraudulent inducement claim.

Parsons argues in the alternative that it should be granted leave to amend its pleadings to *add* a claim for fraudulent inducement. But, pursuant to the Court's pre-trial scheduling order, the deadline to amend pleadings passed on March 22, 2007. The Court may not extend this deadline absent a showing of good cause, see Fed. R. Civ. P. 16(b)(6), and Parsons has not shown any.

ORDER - 8

### F. Calculation of damages

1) <u>Parsons is precluded from obtaining a dollar-for-dollar reduction of the FWCS as a measure of damages.</u>

Parsons does not specify how it will seek to calculate damages at trial. But it does assert that the Shareholders overvalued the FWCS by $23,337,147, resulting in a purchase price that was $23,304,552 higher than it would have been under the "correct" valuation of the FWCS. Kerby argues that Parsons cannot seek damages by engaging in a post hoc recalculation of the FWCS.

The Court agrees with Kerby. As discussed in Part A, *supra*, the FWCS is more than 30 days old and therefore is immune from attack under SPA Section 1.6(c). If Parsons were able to recalculate the FWCS for purposes of ascertaining damages, it would be tantamount to collaterally attacking the FCWS in direct violation of the SPA. Therefore, the Court grants Kerby's motion to preclude Parsons from recalculating the FCWS as its measure of damages.

2) <u>Parsons is not precluded from relying on an EBITDA multiplier as a measure of damages</u>

Parsons argues that RCI's purchase price was based on multiplying RCI's stated annual EBITDA by five, and that the Shareholders overvalued RCI's EBITDA for purposes of this calculation. Parsons alleges that the purchase price would have been $33,970,000 less if the "correct" EBITDA was multiplied by five, suggesting that Parsons' damages should be based on this $33,970,000 figure. Kerby has moved to preclude Parsons from calculating damages in this way.

The SPA makes no mention of EBITDA, and certainly does not state that the purchase price was determined by multiplying EBITDA by five. Moreover, the SPA *does* have an integration clause stating that the SPA "constitutes the entire agreement . . . and supercedes all prior and

ORDER - 9

contemporaneous agreements, understandings, negotiations and discussions." This integration clause means that Parsons cannot bring in extrinsic evidence to supplement the terms of the SPA. See, e.g. Primex Intern. Corp. v Wal-Mart Stores, Inc., 679 N.E.2d 624, 627 (N.Y. 1997). In other words, Parsons cannot bring in extrinsic evidence to show that the parties agreed to base the purchase price on EBITDA times five.

However, this does not mean that Parsons is categorically barred from calculating its damages based on EDITDA times five or any other EBITDA multiplier. The familiar rule in contract cases is that the injured party is entitled to damages based on his expectation interest – i.e., he is entitled to recoup the value that was lost to him as a result of the opposing party's breach. See RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981). There is no reason why Parsons cannot try to prove at trial that its loss in value should be stated in EBITDA terms, with or without some multiplier. While Parsons cannot show that the *contract itself* provided for a purchase price based on EBITDA, courts routinely look outside the four corners of the contract in determining damages. See id., CMT. ILLUS. 1 (looking beyond the contract terms to evaluate damages based presumed lost profits and royalties).

Thus, Parsons is free to argue at trial that the Shareholders alleged misrepresentations damaged Parsons in EBITDA terms, and Parsons is similarly free to argue that some multiplier of EBITDA is the appropriate measure of loss. The one thing Parsons *cannot* do is argue that the contract itself provided for a purchase price based on EBITDA, as the parol evidence rule bars this line of argument. But subject to this limitation, Parsons is free to state its damage in EBITDA terms and make an argument about why a multiplier is appropriate.

## V. Conclusion

Because Parsons has provided evidence that the Shareholders may have breached several representations and warranties in the SPA, the Court DENIES Kerby's motion for summary judgment on Parsons' claims for breach of contract and breach of warranty. However, the Court GRANTS Kerby's motion on Parsons' claims for unjust enrichment, negligent misrepresentation and breach of the implied duty of good faith and fair dealing, as these claims are redundant with the breach of contract claim or otherwise fail as a matter of law.

As to the allowable measures of damages, the Court GRANTS Kerby's motion to preclude Parsons from recalculating the FWCS for damages purposes. The contract itself provides that the FWCS must be deemed binding and conclusive, and therefore Parsons may not attack the FWCS absent any allegation of fraud. However, the Court DENIES Kerby's motion to preclude Parsons from relying on an EBITDA multiplier as a measure of damages. While the contract does not state that the purchase price was based on a multiple of EBIDTA, Parsons is free to provide other evidence of why an EBITDA multiplier is an appropriate measure of Parsons' loss.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: July 16, 2007.

s/ Marsha J. Pechman

Marsha J. Pechman
United States District Judge

ORDER - 11